UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

FILED  APR 26 2017

CLERK

| | |
|---|---|
| **International Union of Operating Engineers, Local 18** § § § § § § § § § § § § § § § | |
| 3515 Prospect Avenue Cleveland, Ohio 44115 | **PETITION FOR REVIEW** |
| Petitioner, | |
| v. | |
| **National Labor Relations Board** | **17-1122** |
| 1015 Half Street SE Washington, D.C. 20570 | |
| Respondent. | |

ORIGINAL

The International Union of Operating Engineers, Local 18 hereby petitions
the Court for review of the Decision and Order of the National Labor Relations
Board ("Board") entered on January 25, 2017: *Operating Engineers Local 18
(Nerone & Sons, Inc.)*, 365 NLRB No. 18 (2017). In this Decision and Order, the
Board adopted the Recommended Order of the Administrative Law Judge,
concluding that Petitioner violated Section 8(b)(4)(ii)(D) of the National Labor
Relations Act by seeking to undermine the Board's prior Section 10(k) awards and
coerce the charging party employers to reassign work awarded to employees
represented by the parties-in-interest unions to employees represented by
Petitioner.

1

Respectfully Submitted,

TIMOTHY R. FADEL, ESQ.
(0077531)
JONAH D. GRABELSKY, ESQ.
(0089009)
Fadel & Beyer, LLC
The Bridge Building, Suite 120
18500 Lake Road
Rocky River, Ohio 44116
Tel: (440) 333-2050
Fax: (440) 333-1695
tfadel@wfblaw.com
jgrabelsky@wfblaw.com
*Counsel for Petitioner*

**REQUEST FOR SERVICE TO THE CLERK OF COURT:**

Please serve Respondent with a copy of the foregoing Petition by certified mail as captioned herein pursuant to Fed.R.App.P. 15(c).

TIMOTHY R. FADEL (0077531)
JONAH D. GRABELSKY (0089009)

**CERTIFICATE OF SERVICE:**

A copy of the foregoing has been served, via Regular U.S. Mail, upon each of the parties admitted to participate in the agency proceedings, except for Respondent, pursuant to Fed.R.App.P. 15(c)(1) on April 24, 2017.

TIMOTHY R. FADEL (0077531)
JONAH D. GRABELSKY (0089009)

NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.

**International Union of Operating Engineers Local 18 *and* Nerone & Sons, Inc. *and* Laborers' International Union of North America, Local 310, Party-In-Interest**

**International Union of Operating Engineers Local 18 *and* R.G. Smith Company, Inc., *and* Laborers' International Union of North America, Local 310, Party-In-Interest**

**International Union of Operating Engineers Local 18 *and* KMU Trucking & Excavating, Inc., Schirmer Construction Co., Platform Cement, Inc., 21st Century Concrete Construction, Inc., Independence Excavating, Inc., *and* Laborers' International Union of North America, Local 310, Party-In-Interest.** Cases 08–CD–135243, 08–CD–143412, and 08–CD–147696

January 25, 2017

DECISION AND ORDER

By Acting Chairman Miscimarra and Members Pearce and McFerran

On August 1, 2016, Administrative Law Judge David I. Goldman issued the attached decision. The Respondent filed exceptions and a supporting brief. The Charging Party Employers and the General Counsel filed answering briefs, and the Respondent filed reply briefs.

The National Labor Relations Board has considered the decision and the record in light of the exceptions and briefs and has decided to affirm the judge's rulings, findings, and conclusions[1] and to adopt the recommended Order.

---

[1] In adopting the judge's finding of violations in this case, we note that the Board has previously considered and rejected the Respondent's work preservation and collusion defenses in *Operating Engineers Local 18 (Donley's Inc.) (Donley's IV),* 363 NLRB No. 184, slip op. at 2–4 & fn. 4 (2016), where the Respondent had asserted, unsuccessfully, those same defenses in the underlying Sec. 10(k) proceeding. Similarly, the Board rejected those same defenses raised in the Sec. 10(k) proceeding underlying the present case. See *Operating Engineers, Local 18 (Nerone & Sons),* 363 NLRB No. 19, slip op. at 4 (2015). The judge therefore correctly recognized that the Respondent's reassertion of those same defenses here was an improper attempt to relitigate the correctness of the Board's prior jurisdictional awards. See *Laborers Local 310 (KMU Trucking & Excavating) (Donley's III),* 361 NLRB No. 37, slip op. at 3 (2014).

We find no merit in the Respondent's argument, based on *ILWU Local 6 (Golden Grain Macaroni Co.),* 289 NLRB 1 (1988), that the judge did not use the "preponderance of the evidence" standard applicable to Sec. 8(b)(4)(ii)(D) determinations. To the contrary, the judge

ORDER

The National Labor Relations Board adopts the recommended Order of the administrative law judge and orders that the Respondent, International Union of Operating Engineers, Local 18, its officers, agents, and representatives, shall take the action set forth in the Order.

Dated, Washington, D.C. January 25, 2017

---

Philip A. Miscimarra,           Acting Chairman

---

Mark Gaston Pearce,           Member

---

Lauren McFerran,           Member

(SEAL)           NATIONAL LABOR RELATIONS BOARD

*Sharlee Cendrosky, Esq. (NLRB Region 8),* of Cleveland, Ohio, for the General Counsel.
*Timothy R. Fadel, Esq. (Fadel & Beyer, LLC),* of Rocky River, Ohio, for the Respondent.
*Frank W. Buck, Esq.* and *Meredith C. Shoop, Esq. (Littler Mendelson, PC),* of Cleveland, Ohio, for the Charging Parties.

DECISION

INTRODUCTION

DAVID I. GOLDMAN, Administrative Law Judge. These cases involve the International Union of Operating Engineers Local 18 (Local 18 or Respondent) and its continued effort to force employers operating under the Ohio-based Construction Employer's Association (CEA) building agreement to use Local 18-represented operators to perform forklift and skid steer work.

In a recent decision, *Operating Engineers Local 18,* 363 NLRB No. 184 (2016) (*Donley's IV*), the National Labor Relations Board (Board) found Local 18 in violation of the National Labor Relations Act (Act) for the essentially identical conduct at issue here. In *Donley's IV,* the Board found that notwithstanding its award and filed new pay-in-lieu grievances seeking work previously awarded to Laborers local unions, Local 18

---

found that "the Respondent has stipulated to every element of the violation that needs to be decided"—specifically, that it continued to maintain existing and filed new pay-in-lieu grievances seeking work previously awarded to Laborers-represented employees. *Donley's IV,* slip op. at 2 & fn. 4. Those stipulations plainly establish by a preponderance of the evidence the Respondent's violation of the Act.

2      DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

unlawfully continued its effort to force employers to assign the forklift and skid steer work to Local 18-represented employees.

The instant cases involve the same unions, the same type of work, and employers operating under the same labor agreements as in *Donley's IV*. Here too, in two exhaustively litigated underlying 10(k) awards, the Board awarded the disputed forklift and skid steer work to a Laborers local union, Local 310 (Laborers and/or Laborers Local 310), and rejected the arguments advanced by Local 18 for the work. Here too, notwithstanding the Board's awards, Local 18 has refused to comply with the awards and continues to seek to force employers operating under the CEA to give it contractually what the Board has determined it may not have: the skid and steer work arising within the overlapping jurisdictions of the Laborers Local 310 and Local 18.

Under longstanding Board precedent, Local 18's admitted and continued pursuit of contractual grievances seeking payment for the employers' assignment of the work to the Laborers Local 310—after a 10(k) decision awarding the work to Local 310—is essentially an admission of a violation of the Act. Local 18's chief defense—that it is engaging in work preservation and not work acquisition—has been rejected. It was rejected by the Board in both of the underlying 10(k) decisions. And it was rejected again, independently, by the Board in *Donley's IV*, on a basis indistinguishable from the work-preservation defense Local 18 seeks to advance here. Accordingly, as discussed herein, I find that Local 18 has violated the Act as alleged.

STATEMENT OF THE CASE

On August 21, 2014, Nerone & Sons, Inc. (Nerone) filed an unfair labor practice charge against Local 18, docketed by Region 8 of the Board as case 08–CD–135243. Nerone filed a first amended charge in the case on October 29, 2014, and a second amended charge on December 23, 2015.

On December 23, 2014, R.G. Smith Co. Inc. (R.G. Smith) filed an unfair labor practice charge against Local 18 docketed by Region 8 of the Board as case 08–CD–143412. R.G. Smith filed an amended charge in this case on December 23, 2015.

On March 6, 2015, KMU Trucking & Excavating, Inc. (KMU), Schirmer Construction Co. (Schirmer), Platform Cement, Inc. (Platform), 21st Century Concrete Construction, Inc. (21st Century), and Independence Excavating, Inc. (Independence), filed an unfair labor practice charge against Local 18 docketed by Region 8 of the Board as Case 08–CD–147696. After investigation into the charge in Case 08–CD–147696, on April 30, 2015, the Board's General Counsel, by the Regional Director for Region 8 of the Board, issued a complaint alleging violations of the Act by Local 18.

After investigation into the charges in Cases 08–CD–135243 and 08–CD–143412, on January 29, 2016, the Board's General Counsel, by the Regional Director for Region 8 of the Board, issued an order consolidating Case 08–CD–147696 with Case 08–CD–135243 and Case 08–CD–143412, and issued a consolidated complaint in all three cases alleging violations of the Act by Local 18. On February 12, 2016, Local 18 filed an answer to the consolidated complaint denying all violations of the Act. On April 13, 2016, the General Counsel, by the Regional Direc-

tor for Region 8, issued an amended consolidated complaint in these cases. On April 28, 2016, Local 18 filed an answer to the amended consolidated complaint denying all violations of the Act. (Hereinafter, the amended consolidated complaint is referred to as the complaint.)

On April 22, 2016, the Charging Parties (referred to herein collectively as the Employers or Charging Parties) filed their motion in limine to exclude certain evidence in the upcoming hearing. The General Counsel filed a response in support of the Charging Parties' motion on April 27, 2016. The Respondent filed responses in opposition to the motion on April 29, 2016.

The hearing in this matter commenced May 2, 2016, by telephonic appearance of counsel for all parties. At that time the parties provided argument on the Charging Parties' motion in limine to exclude certain evidence in the hearing in this matter. The hearing recessed that day. On May 4, 2016, I issued an amended order granting Charging Parties' motion in limine.[1]

The hearing resumed May 9, 2016, in Cleveland, Ohio, and was completed that day. Counsel for the General Counsel, the Charging Parties, and the Respondent filed posttrial briefs in support of their positions by June 13, 2016. The Respondent filed a motion to reopen the record on July 21, 2016, which is discussed herein. On the entire record, I make the following findings, conclusions of law, and recommendations.

JURISDICTION

Charging Party KMU is an Ohio corporation with an office and place of business in Avon, Ohio, and a contractor engaged in the construction industry. In conducting its business operations, KMU purchased and received at its Avon, Ohio facility materials valued in excess of $50,000 directly from points located outside of the State of Ohio.

Charging Party Schirmer is an Ohio corporation with an office and place of business in North Olmsted, Ohio, and a contractor engaged in the construction industry. In conducting its business operations, Schirmer purchased and received at its North Olmsted, Ohio facility materials valued in excess of $50,000 directly from points located outside of the State of Ohio.

Charging Party Platform is an Ohio corporation with an office and place of business in Mentor, Ohio, and a contractor engaged in the construction industry. In conducting its business operations, Platform purchased and received at its Mentor, Ohio facility materials valued in excess of $50,000 directly from points located outside of the State of Ohio.

Charging Party 21st Century is an Ohio corporation with an office and place of business in Cleveland, Ohio, and a contractor engaged in the construction industry. In conducting its business operations, 21st Century derived gross revenues in excess of $50,000 from the sale or performance of its services to public utilities, transit systems, newspapers, health care institutions, broadcasting stations, commercial buildings, educational institutions, and/or retail concerns.

---

[1] The amended order superseded and corrected a May 3 order granting the motion in limine that contained an erroneous footnote citation. Local 18 filed a request for special permission to appeal the ruling with the Board. The request for special permission to appeal was denied by order of the Board on July 12, 2016.

Charging Party Independence is an Ohio corporation with an office and place of business in Independence, Ohio, and a contractor engaged in the construction industry. In conducting its business operations, Independence purchased and received at its Independence, Ohio facility materials valued in excess of $50,000 directly from points located outside of the State of Ohio.

Charging Party Nerone is an Ohio corporation with an office and place of business in Warrensville Heights, Ohio, and a contractor engaged in the construction industry. In conducting its business operations, Nerone purchased and received at its Warren, Ohio facility materials valued in excess of $50,000 directly from points located outside of the State of Ohio.

Charging Party R.G. Smith is an Ohio corporation, with an office and place of business in Canton, Ohio, and a contractor engaged in the construction industry. In conducting its business operations, R.G. Smith purchased and received at its Canton, Ohio facility materials valued in excess of $50,000 directly from points located outside of the State of Ohio.

Each of the foregoing Charging Parties is an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

At all material times, the Construction Employer's Association of Greater Cleveland (CEA), has been an organization comprised of various employers engaged in the construction industry, one purpose of which is to represent its employer-members in negotiating and administering collective-bargaining agreements with various labor organizations, including Local 18. At all material times, the Charging Parties have been employer-members and/or signatories to collective-bargaining agreements of the CEA and have delegated and authorized the CEA to represent them in negotiating and administering collective-bargaining agreements with various labor organizations, including Local 18 and the Laborers Local 310.

At all material times, the CEA has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act. Local 18 and the party-in-interest to these proceedings, Laborers Local 310, are each labor organizations within Section 2(5) of the Act.

Based on the foregoing, I find that this dispute affects commerce and that the Board has jurisdiction of these cases, pursuant to Section 10(a) of the Act.

UNFAIR LABOR PRACTICES

Background

At all material times, each of the Employers has been operating under the terms of collective-bargaining agreements negotiated between the CEA and various unions including Local 18 and the Laborers Local 310.

The current agreement between the CEA and Local 18, the CEA Building Agreement, was effective July 1, 2015, and is scheduled to terminate no earlier than May 31, 2019. The immediately previous CEA Building Agreement was effective May 1, 2012, through April 30, 2015. The current agreement between the CEA and Laborers Local 310 was effective May 1, 2015, and is scheduled to terminate no earlier than April 30, 2019. The immediately previous agreement was effective May

1, 2012, through April 30, 2015. Both the CEA-Local 18 agreements, and the CEA-Local 310 agreements cover, inter alia, work performed in Cuyahoga County. Both Unions' agreements with the CEA purport to cover the operation of forklift and skid steer work when such work otherwise falls within their geographical and operational jurisdiction.

The skid steer and forklift work that the Respondent is alleged to be unlawfully seeking to force the Employers to assign to it is located at jobsites within Cuyahoga County, Ohio. This forklift and skid steer work was awarded to the Laborers Local 310 in two 10(k) orders involving these Employers: *Laborers Local 310 (KMU Trading & Excavating)* (*Donley's III*), 361 NLRB No. 37 (2014), and *Operating Engineers Local 18 (Nerone & Sons)* (*Nerone*), 363 NLRB No. 19 (2015).

In *Donley's III*, after a hearing conducted January 13 and 14, 2014, the Board issued an award September 3, 2014, providing that:

> Employees of KMU Trucking & Excavating, Schirmer Construction Co., Platform Cement, Inc., 21st Century Concrete Construction, Inc., Independence Excavating, Inc. and Donley's Inc., who are represented by Laborers' International Union of North America, Local 310 are entitled to perform forklift and skid steer work in the area where their employers operate and the jurisdiction of Laborers' International Union of North America, Local 310 and the International Union of Operating Engineers, Local 18 overlap.[2]

In *Nerone*, after a hearing conducted February 9, and March 27, 2015, the Board issued an award October 1, 2015, providing that:

> Employees of Nerone & Sons, Inc. and R.G. Smith Company, Inc., who are represented by Laborers' International Union of North America, Local 310 are entitled to perform forklift and skid steer work in the area where their employers operate and the jurisdiction of Laborers' International Union of North America, Local 310 and the International Union of Operating Engineers, Local 18 overlap.

The foregoing 10(k) awards were not the Board's first rulings on the dispute. In a previous 10(k) decision involving the same unions, the same type of work, and employers operating under the same multiemployer contractual agreements, the Board similarly awarded the forklift and skid steer work to the Laborers Local 310 and not to Local 18. Thus in *Operating Engineers Local 18 (Donley's Inc.) (Donley's II)*, 360 NLRB No. 113 (2014), after a hearing conducted February 25–28, 2013, the Board issued an award finding that the Laborers Local 310 employees and not the Local 18 employees of the charging party employers (all of whom were signatories to CEA-negotiated agreements with the Laborers Local 310 and Local 18) "are entitled to perform work utilizing forklifts and skid steers in the area where their employers operate and the jurisdiction of Laborers . . . Local 310 and . . . Local 18 overlap."

---

[2] I note that while the employer Donley's Inc., filed a charge that was resolved as part of the *Donley's III* 10(k) decision, it is not a charging party in the instant unfair labor practice cases.

4                    DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

Similarly, in *Laborers Local 894 (Donley's, Inc.)* (*Donley's I*), 360 NLRB No. 20 (2014), after a record developed in a hearing conducted from July 23–26, 2012, the Board issued an award rejecting Local 18's claims to an employer's (Donley's) forklift and skid steer work performed at a site under the CEA's jurisdiction, which was awarded to Laborers Local 310. In this decision, the Board also rejected Local 18's claim to forklift and skid steer work performed for Donley's at a Goodyear construction project site in Akron, Ohio, operating within the jurisdiction of the Associated General Contractors of Ohio. That work was awarded to Local 894 of the Laborers.

Notably, in *Donley's II*, *Donley's III*, and *Nerone*, the Board issued broad areawide awards covering the geographic jurisdiction of Local 18 because the evidence showed that the "dispute here is likely to recur on other jobsites within the Operating Engineers geographical jurisdiction," and also because "the evidence similarly demonstrates a proclivity by Operating Engineers to engage in further conduct proscribed by Section 8(b)(4)(D) in order to obtain disputed work." *Donley's II*, 360 NLRB No. 113, slip op. at 7–8; *Donley's III*, 361 NLRB No. 37, slip op. at 6; *Nerone*, 363 NLRB No. 19, slip op. at 6.

As anticipated in *Donley's II*, Local 18 refused to comply with the 10(k) awards in *Donley's I* and *Donley's II*, and its continued effort to obtain the work assigned to the Laborers Local 310 (and Local 894) in *Donley's I* and *Donley's II* was found unlawful by the Board in *Donley's IV*, 363 NLRB No. 184 (2016).

In *Donley's IV*, the Board concluded, in agreement with Administrative Law Judge Mark Carissimi, and after a 12-day trial, that Local 18 had violated Section 8(b)(4)(ii)(D) by coercively attempting to force the charging party employers, through picketing and/or maintaining contractual grievances, to assign forklift and skid steer work to the Respondent "in the area where the Employers operate and the jurisdiction of Local 310 and the Respondent overlap." In reaching its conclusion, the Board in *Donley's IV* rejected the same "work preservation" defense and other defenses advanced by the Respondent in the instant cases. As noted, as in the instant cases, the employers involved in *(Donley's IV)* included employers operating under the terms of collective-bargaining agreements negotiated by the CEA with Local 18 and with the Laborers Local 310.[3]

---

[3] The record in *Donley's I*, *Donley's II*, *Donley's III*, *Nerone*, and *Donley's IV*, (the four 10(k) proceedings and the unfair labor practice proceeding) are part of the record in this case. *Donley's IV*, which incorporated the record from *Donley's I* and *Donley's II*, was incorporated into the record for *Nerone*. In addition *Donley's I*, and *Donley's II*, were independently incorporated into the record for *Donley's III*. 361 NLRB No. 37, slip op. at 1, fn. 4. Moreover, the record for *Donley's I*, *Donley's II*, and *Donley's III*, were independently incorporated into the record for *Nerone*. 363 NLRB No. 19, slip op. 1, fn. 2. Finally, pursuant to Sec. 102.92 of the Board's Rules and Regulations, the record of the underlying 10(k) proceedings in the instant cases (i.e., *Nerone* and *Donley's III*) "shall become part of the record" in "an unfair labor practice proceeding" in which the underlying 10(k) determination are at issue. Thus, the record of *Donley's I*, *Donley's II*, *Donley's III*, *Nerone*, and *Donley's IV* are part of the record in this unfair labor practice proceeding. I note that the General Counsel's unopposed posttrial motion to supplement Joint Exhibit 30 to provide a copy of the

Grievances

The coercive activity alleged by the General Counsel in the instant cases involves the maintenance of pending and the filing of new contractual grievances against the Employers by Local 18 related to the forklift and skid steer work covered by the 10(k) awards even after the issuance of the Board's awards in *Donley's III and Nerone*. That the grievances have been maintained, that new ones have been filed, and that the Respondent will not withdraw or cease processing them, is undisputed. Below I set forth the relevant grievance activity.

*Grievances filed before the Donley's III 10(k) award*

Local 18 filed the following grievances against a Charging Party Employer before the issuance of the Board's 10(k) award in *Donley's III* (on September 1, 2014), seeking a remedy for the Employers' failure to use Local 18-represented employees for forklift or skid steer work under the CEA Building Agreement. The grievances seek pay and fringe benefits for the first qualified applicant from the day of violation. As of May 9, 2016, all of these grievances have continued to be maintained by the Respondent, and have not been withdrawn.

Employer's Exhibit 22 from *Donley's III* 10(k) hearing (¶1(a) to Jt. Exh. 29) — This is a grievance dated March 26, 2013, filed against Independence alleging breach of the 2012–2015 CEA Building Agreement. The project at issue is known as the "Alcoa" project located in Cleveland, Ohio. The equipment at issue is a skid steer loader.

Employer's Exhibit 21 from *Donley's III* 10(k) hearing (¶1(b) to Jt. Exh. 29) — A grievance dated March 26, 2012 (sic 2013), filed against Independence alleging breach of the 2012–2015 CEA Building Agreement. The project at issue is known as the "Alcoa" project located in Cleveland, Ohio. The equipment at issue is a forklift.

Employer's Exhibit 14 from *Donley's III* 10(k) hearing (¶1(c) to Jt. Exh. 29) — This is a grievance dated May 16, 2013, filed against KMU alleging breach of the 2012–2015 CEA Building Agreement. The project at issue is known as the "Equity Trust" project located in Westlake, Ohio. The equipment at issue is a forklift.

Employer's Exhibit 15 from *Donley's III* 10(k) hearing (¶1(d) to Jt. Exh. 29) — This is a grievance dated June 3, 2013, filed against KMU alleging breach of the 2012–2015 CEA Building Agreement. The project at issue is known as the "Equity Trust" project located in Westlake, Ohio. The equipment at issue is a skid steer.

Employer's Exhibit 10 from *Donley's III* 10(k) hearing (¶1(e) to Jt. Exh. 29) — This is a grievance dated June 3, 2013, filed against Platform alleging breach of the 2012–2015 CEA Building Agreement. The project at issue is known as the "Equity Trust" project located in Westlake, Ohio. The equipment at issue is a skid steer.

Employer's Exhibit 7 from *Donley's III* 10(k) hearing (¶1(f) to Jt. Exh. 29) — This is a grievance dated April 1, 2013, filed against Schirmer alleging breach of the 2012–2015 CEA Building Agreement. The project at issue is known as the "South

---

transcripts and exhibits from *Donley's I*, and *Donley's II* in CD format, is hereby granted.

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 18 (NERONE & SONS INC.)                5

Point Hospital" project located in Warrensville Heights, Ohio. The equipment at issue is a skid steer.

Employer's Exhibit 18 from *Donley's III* 10(k) hearing (¶1(g) to Jt. Exh. 29) — This is a grievance dated February 7, 2013, filed against 21st Century alleging breach of the 2012–2015 CEA Building Agreement. The project at issue is known as the "Southwest General Hospital" project located in Middleburg Heights, Ohio. The equipment at issue is a forklift.

Joint Exhibit 3 (¶5 to Jt. Exh. 29) — On February 25, 2014, Respondent filed a grievance against Independence alleging breach of the 2012–2015 CEA Building Agreement. The grievance relates to work performed at the First Energy Stadium project located in Cleveland, Ohio. The equipment at issue is a skid steer. The employee(s) performing the work at issue were members of the Laborers Local 310.

Joint Exhibit 4 (¶6 to Jt. Exh. 29) — On June 30, 2014, Respondent filed a grievance against Independence alleging breach of the 2012–2015 CEA Building Agreement. The grievance relates to work performed at the Mini-Cooper Dealership project located in Brook Park, Ohio. The equipment at issue is a skid steer. The employee(s) performing the work at issue were members of the Laborers Local 310.

Joint Exhibit 5 (¶7 to Jt. Exh. 29) — On July 14, 2014, Respondent filed a grievance against Independence alleging breach of the 2012–2015 CEA Building Agreement. The grievance relates to work performed at the Hilton Hotel Downtown located in Cleveland, Ohio. The equipment at issue is a skid steer. The employee(s) performing the work at issue were members of the Laborers Local 310.

On March 5, 2015, Respondent, by counsel, notified Allen Binstock, Regional Director of Region 8 of the Board, by letter, that Local 18 was in receipt of the Board's decision in *Donley's III*, that its motion for reconsideration to the Board had been denied, and that Local 18 would not withdraw any current pending grievances filed against any employer, including those grievances identified above. On March 6, 2015, Respondent, by counsel, sent a letter to Frank Buck, counsel for the Employers, requesting that Buck contact Respondent in order to select arbitrators for each of the grievances identified in the letter, which included, among others, each of the foregoing grievances.

*Additional Grievances Filed Post Donley's III 10(k) Award*

The following grievances were filed by the Respondent after the issuance of the Board's award in *Donley's III*, and as of May 9, 2016, continued to be maintained and had not been withdrawn.

Joint Exhibit 6 (¶8 to Jt. Exh. 29) — On September 12, 2014, Respondent filed a grievance against Independence alleging breach of the 2012–2015 CEA Building Agreement. The grievance relates to work performed at the Salvation Army project in Cleveland, Ohio. The equipment at issue is a skid steer. The employee(s) performing the work at issue were members of the Laborers Local 310.

Joint Exhibit 7 (¶9 to Jt. Exh. 29) — On October 13, 2014, Respondent filed a grievance against Independence alleging breach of the 2012–2015 CEA Building Agreement. The grievance relates to work performed at the Cleveland Clinic Cancer

Center in Cleveland, Ohio. The equipment at issue is a skid steer. The employee(s) performing the work at issue were members of the Laborers Local 310.

Joint Exhibit 8 (¶10 to Jt. Exh. 29) — On October 27, 2014, Respondent filed a grievance against Independence alleging breach of the 2012–2015 CEA Building Agreement. The grievance relates to work performed at the Progressive Field jobsite in Cleveland, Ohio. The equipment at issue is a forklift. The employee(s) performing the work at issue were members of the Laborers Local 310.

Joint Exhibit 9 (¶11 to Jt. Exh. 29) — On October 27, 2014, Respondent filed a grievance against independence alleging breach of the 2012–2015 CEA Building Agreement. The grievance relates to work performed at the Progressive Field jobsite in Cleveland, Ohio. The equipment at issue is a skid steer. The employee(s) performing the work at issue were members of the Laborers Local 310.

Joint Exhibit 10 (¶12 to Jt. Exh. 29) — On January 25, 2016, Respondent filed a grievance against Independence alleging breach of the 2015–2019 CEA Building Agreement. The grievance relates to work performed at the D.O. Summer's Dry Cleaning project in Cleveland, Ohio. The equipment at issue is a skid steer. The employee(s) performing the work at issue were members of the Laborers Local 310.

Joint Exhibit 11 (¶13 to Jt. Exh. 29) — On March 23, 2016, Respondent filed a grievance against KMU alleging breach of the 2015–2019 CEA Building Agreement. The grievance relates to work performed at the Whitlach Building project in Cleveland, Ohio. The equipment at issue is a forklift. The employee(s) performing the work at issue were members of the Laborers Local 310.

Joint Exhibit 12 (¶14 to Jt. Exh. 29) — On March 28, 2016, Respondent filed a grievance against KMU alleging breach of the 2015–2019 CEA Building Agreement. The grievance relates to work performed at the Whitlach Building project in Cleveland, Ohio. The equipment at issue is a skid steer. The employee(s) performing the work at issue were members of the Laborers Local 310.

Joint Exhibit 14 (¶16 to Jt. Exh. 29) — On March 23, 2016, Respondent filed a grievance against Platform alleging breach of the 2015–2019 CEA Building Agreement. (This followed, the incident on March 18, 2016, when David Russell, Jr. handed a piece of paper known in the industry as a "Miranda Card" to a representative of Platform (Jt. Exh. 13)). The grievance relates to work performed at the Salvation Army Harbor Light project in Cleveland, Ohio. The equipment at issue is a skid steer. The employee(s) performing the work at issue were members of the Laborers Local 310.

On March 6, 2015, Respondent, by counsel, sent a letter to Frank Buck, counsel for the Employers, requesting that Buck contact the Respondent in order to select arbitrators for each of the grievances identified in the letter. These grievances included the above-described grievances found at Joint Exhibit 6 (¶8 to Jt. Exh. 29), Jt. Exh. 7 (¶9 to Jt. Exh. 29) and two found at Joint Exhibits 8, and 9 (¶¶10, 11 to Jt. Exh. 29). On February 16, 2016, Local 18's President, Thomas Byers, sent a letter to Tim Linville, CEO of the CEA, requesting a step 3 grievance hearing related to the January 25, 2016 grievance, identified

above as related to Joint Exhibit 10 (¶12 to Jt. Exh. 29). By letter dated March 29, 2016, from the Respondent's counsel to Shakima Wright of the Federal Mediation and Conciliation Service, the Respondent requested an arbitration panel related to this January 25, 2016 grievance. By letter dated March 29, 2016. Respondent's counsel notified Counsel for the Employers Buck that with regard to this grievance the Respondent had filed a request for an arbitration panel. On April 12, 2016, the Respondent's President Byers sent a letter to the CEA's CEO Linville requesting a step 3 grievance hearing on the grievance identified above with Joint Exhibit 12 (¶14 to Jt. Exh. 29). On April 12, 2016, the Respondent's President Byers sent another letter to the CEA's CEO Linville requesting a step 3 grievance hearing on the grievance identified above with Joint Exhibit 11 (¶13 to Jt. Exh. 29). On April 12, 2016, the Respondent's President Byers sent another letter to the CEA's CEO Linville requesting a step 3 grievance hearing on the grievance identified above with Joint Exhibit 14 (¶16 to Jt. Exh. 29).

To date, the Respondent has continued to maintain and process the grievances identified above and, to date, the Respondent has not withdrawn any of these grievances.

### Grievances filed before the Nerone 10(k) award

Local 18 filed and maintained the following grievances against a Charging Party Employer before the issuance of the Board's 10(k) award in *Nerone* (on October 1, 2015), seeking a remedy for the Employers' failure to use Local 18-represented employees for forklift or skid steer work under the CEA-Local 18 labor agreement. The grievances seek pay and fringe benefits for the first qualified applicant from the day of violation. As of May 9, 2016, all of these grievances have continued to be maintained by the Respondent, and have not been withdrawn.

Employer's Exhibit 4 from *Nerone* 10(k) hearing (hearing (¶26(a) to Jt. Exh. 29). This is a grievance dated August 4, 2014, filed against Nerone alleging breach of the 2012–2015 CEA Building Agreement. The project at issue is known as the "Downtown Hilton Hotel" project and is located in Cleveland, Ohio. The equipment at issue was a skid steer loader.

Employer's Exhibit 8 from *Nerone* 10(k) hearing (¶26(b) to Jt. Exh. 29). This is a grievance dated November 6, 2014 was filed against R.G. Smith alleging breach of the 2012–2015 CEA Building Agreement. The project at issue is known as the "Foltz Parkway project" and is located in Strongsville, Ohio. The equipment at issue was a forklift.

To date, Respondent has continued to maintain and process these Nerone and R.G. Smith grievances, and to date the Respondent has not withdrawn them.

On October 9, 2015, Respondent, by counsel, notified Allen Binstock, Regional Director for Region 8 of the Board by letter, that the Respondent would not withdraw any current pending grievances filed against Nerone and/or R.G. Smith Co.

### Additional Grievances Filed Post 10(k) Award

On January 18, 2016, David Russell, Jr. handed a piece of paper known in the industry as a "Miranda Card" to a representative of Nerone. Joint Exhibit 24 (¶29 to Jt. Exh. 29). On February 2, 2016, Respondent filed a grievance against Nerone alleging breach of the 2015–2019 CEA Building Agreement.

The grievance relates to work performed at the Lakewood High School project in Lakewood, Ohio. The equipment at issue is a forklift. The employee(s) performing the work at issue were members of the Laborers Local 310. Joint Exhibit 25 (¶30 to Jt. Exh. 29).

On February 17, 2016, Respondent sent a letter to Tim Linville, CEO of the CEA, requesting a step 3 grievance hearing related to the foregoing grievance. On March 29, 2016, Respondent, by counsel, sent a letter to Shakima Wright of the FMCS stating that Respondent requested an Arbitration Panel related to this grievance. To date, the Respondent has continued to maintain and process this grievance, and, to date, the Respondent has not withdrawn this grievance.

### Analysis

"[T]he Board has long held that a union's pursuit of contractual claims to obtain work the Board has awarded in a 10(k) determination to another group of employees, or to secure monetary damages in lieu of the work, violates Section 8(b)(4)(ii)(D)." *Donley's IV*, 363 NLRB No. 184, slip op. at 3 (2016) (and cases cited therein); *Local 7, ILWU (Bellingham Division)*, 291 NLRB 89 (1988) (pay-in-lieu-of-work grievances violated Section 8(b)(4)(D)).

"Such postaward conduct is properly prohibited under Section 8(b)(4)(D) because it directly undermines the 10(k) award, which, under the congressional scheme, is supposed to provide a final resolution to the dispute over which group of employees are entitled to the work at issue." *Roofers Local 30*, 307 NLRB 1429, 1430 (1992), enfd. 1 F.3d 1419 (3d Cir. 1993). quoted in *Donley's IV*, supra at slip op. at 3.

Here, as set forth above, since the Board's award of the disputed skid steer and forklift work to the Laborers Local 310, the Respondent has continued to maintain pending and to file new pay-in-lieu-of work grievances that seek to require Charging Party Employers to pay Respondent-represented employees for skid steer and forklift work assigned by the Employers to Laborers Local 310-represented employees. The Respondent's grievances directly conflict with the Board's 10(k) awards in *Donley's III* and in *Nerone*. The Respondent has notified the Employers and the Regional Director of the Board's Region 8 that it will not withdraw and will not cease processing the grievances. As of the date of the hearing, by all evidence, these grievances seeking payment for skid steer and forklift work performed by the Employers' Local 310-represented employees continue to be maintained and pursued. This conduct, in the face of the 10(k) awards, makes for a straightforward violation of Section 8(b)(4)(D).

The Respondent's defenses are unavailing, and ignore established Board precedent, including precedent from May 6, 2016, articulated by the Board in *Donley's IV*. In that decision, the very same defenses advanced here were rejected by the Board against the same respondent, who was seeking the same work that had been assigned by the Board to the same other union, under the same labor agreements. The only material difference between the instant cases and *Donley IV* is the identity of the employer charging parties.

While the Respondent contends that the 10(k) awards underlying this case are "much like an 'advisory opinion'," and have

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 18 (NERONE & SONS INC.)          7

"no utility" here (R. Br. at 71), this is quite wrong. In terms of the assignment of work, the 10(k) awards are significant indeed. They resolve the question of which union-represented employees are entitled to the disputed work. And while not determinative of the 8(b)(4)(D) unfair labor practice litigation, the 10(k) award is no small matter.

As the Supreme Court has recognized, "[The] impact of the § 10 (k) decision is felt in the § 8(b)(4)(D) hearing because for all practical purposes the Board's award determines who will prevail in the unfair labor practice proceeding. If the picketing union persists in its conduct despite a § 10 (k) decision against it, a § 8(b)(4)(D) complaint issues and the union will likely be found guilty of an unfair labor practice and be ordered to cease and desist." *ITT v. Local 134, IBEW*, 419 U.S. 428, 444 (1975) (quoting *NLRB v. Plasterers Local 79*, 404 U.S. 116, 126–127 (1971)). And the reason the 10(k) award "for all practical purposes"—but not definitively—determines the outcome of the 8(b)(4)(D) hearing, is not because the Board will reweigh the award of work in the unfair labor practice hearing, but because it still must be proven at the unfair labor practice hearing what the 10(k) hearing found only "reasonably likely"—that the union continues to picket, grieve, or otherwise act coercively to obtain the work awarded by the Board to another union.

Thus, while the elements of the 8(b)(4)(ii)(D) allegations, even those previously litigated in the 10(k) hearings may be litigated in this proceeding, the work at issue has been awarded to the Laborers Local 310. The scope of the instant unfair labor practice hearing does not include relitigation of "the correctness of the Board's 10(k) determination." *Plasterers Local 200 (Standard Drywall)*, 357 NLRB 2212, 2214 (2011) (citing *Plasterers Local 200 (Standard Drywall)*, 357 NLRB 1921, 1923 (2011)), enfd. 547 Fed.Appx. 809 (9th Cir. 2013); *Tile, Marble, Terrazzo Finishers, Shopworkers Local 47-T (Grazzini Bros. & Co.)*, 315 NLRB 520, 522 (1994) ("It is well settled that a party to a Board 10(k) proceeding cannot relitigate the Board's work assignment in a subsequent 8(b)(4)(D) case"), citing *Longshoremen ILA Local 1566 (Holt Cargo)*, 311 NLRB No. 166, slip op. at 2 (Aug. 9, 1993) (unpublished) (Respondent not "entitled to litigate the threshold issue of whether the 10(k) award . . . was proper. . . . It is well settled that a party to a Board 10(k) proceeding cannot relitigate the Board's work assignment in a subsequent 8(b)(4)(D) case").

Here, the issue to be litigated is the Respondent's alleged violation of Section 8(b)(4)(D). But the Respondent has stipulated to every element of the violation that needs to be decided. What it seeks to contest is what it may not contest: the underlying Board award of the disputed work to the Laborers. The 8(b)(4)(ii)(D) question, given the Board's 10(k) award, is whether the Respondent is coercively seeking to have Employers assign that work to itself in derogation of the 10(k) awards. That the Respondent is doing so is undeniable given its stipulations to post-award grievance-filing and processing that the Board has long held coercive.

More specifically, the Respondent raises two unavailing defenses to the 8(b)(4) allegations.

First, it contends that the Employers and Local 310 engaged in collusion to artificially manufacture an 8(b)(4)(D) dispute. However, this issue was raised to and rejected by the Board in

*Donley's III*, slip op. at 3, and in *Nerone*, slip op. at 4. This defense is not subject to relitigation in the subsequent 8(b)(4)(D) proceeding. *Donley's IV*, 363 NLRB No. 184, slip op. at 2; *Plasterers Local 200 (Standard Drywall)*, 357 NLRB at 1923 fn. 12.[4]

Second, the Respondent mounts a work-preservation defense, arguing that that its grievances involve "work preservation." However, this defense must also be rejected.

First, it must be rejected because it goes to the heart of the Board's jurisdictional award of the disputed work to the Laborers Local 310. For this reason, this defense was expressly rejected by the Board in *Donley's III* and in *Nerone*, and that rejection in the underlying 10(k) hearings is binding on the Respondent—and on me.

As the Board explained in response to this very argument in

---

[4] On July 21, 2016, after the close of the hearing in this matter, the Respondent filed a motion to reopen the record, arguing that an alleged posthearing comment by a CEA director constituted "new" evidence and a basis to reassert the rejected collusion contention. However, as the Charging Parties point out, the "new" evidence—taken as true—is simply more of the same argument expressly rejected by the Board in *Donley's IV*, and, for that matter, already advanced in the Respondent's brief. Thus, the "new" evidence essentially consists of an alleged statement by a CEA official on June 6, 2016, that the Respondent's 2012 picketing of a Donley's Goodyear parking garage project "set the tone for the CEA's subsequent negotiations" in 2012 with the Laborers, negotiations which resulted in revisions expressly stating that the Laborers work included the operation of forklifts and skid steers. I note that without regard to the new evidence, the Respondent's brief already advances the argument (R. Br. at 55–57) that the Goodyear site dispute spurred or motivated the Laborers/CEA language changes. Thus, the new of evidence is of no consequence for this reason alone. But even more important, the Board in *Donley's IV*, answered the argument, holding that there is "nothing nefarious or collusive in the CEA and Local 310 negotiating this revised jurisdictional language" in response to the campaign commenced by the Respondent to have the forklift and skid steer work assigned to its employees, despite the fact that, as the Respondent's representatives admitted, this work had been given away "a long time ago." *Donley's IV*, supra at slip op. 3 fn. 4. Thus, the Board has held that it was not "collusive" for the employers and the laborers to respond in contract negotiations to the Respondent's campaign to take back the forklift and skid steer work. In its motion, the Respondent puts great weight on its claim that the Goodyear project was outside of the CEA's jurisdiction, and thus, it argues, any affect that *that* picketing had on the tone of the CEA negotiations proves collusion. The Charging Party calls this "bizarre"—and it certainly points in that direction. As the Board found, and as the evidence shows beyond any dispute, the Respondent's campaign to have the skid steer and forklift work assigned to it was broad and not confined to non-CEA jurisdictions. And it would not matter if it were. As the Board found, this was "the context" in which the Laborers and the CEA clarified their contractual language, and it is not evidence of collusion, even assuming, arguendo, that a picket at the Goodyear project "set the tone" for the 2012 negotiations. I deny the motion. The proposed evidence is of no import.

Finally, the Respondent argues that the record should be reopened because, allegedly, in the June 6, 2016 conversation the CEA official stated that "he was the one who insisted that new equipment be included in [the Laborers/CEA agreement." According to the Respondent, this statement "impacts the weight and credibility of testimony already adduced." I do not agree. Even taking the statement as true, it changes no finding or conclusion at issue in these cases.

8                     DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

*Local 1332, ILA (Philadelphia Marine Trade Assn.),* 219 NLRB 1229, 1229 fn. 1 (1975), enfd. mem. 542 F.2d 1167 (3d Cir. 1976):

> [The Respondent] argues that the Administrative Law Judge erroneously decided that he was bound by the Board majority's rejection [in the underlying 10(k) decision] of the "work preservation" defense inasmuch as The Board in a 10(k) proceeding need decide only that "reasonable cause to believe" exists that Sec. 8(b)(4)(D) has been violated, whereas in an unfair labor practice proceeding the violation must be proved by a "preponderance of evidence." Respondent contends, therefore, the Board should reconsider the "work preservation" defense in light of this latter test. We do not agree. The actual or potential loss of work is often the very essence of a jurisdictional dispute. Hence, whatever force this argument might have in other circumstances, it is not applicable here. Upon the basis of the undisputed facts the majority decided in the 10(k) proceeding that as a matter of law a jurisdictional dispute existed which called for a Board determination. That finding was binding on the Administrative Law Judge and we reiterate it here.

What was true in *Local 1332* is very much the case here. The "very essence" of the jurisdictional dispute in *Donley's III* and in *Nerone* was the issue of to whom the work in dispute belonged—and the Board, in both cases, pointedly rejected the Respondent's work-preservation defense and the alleged factual underpinnings to it.

Second, the Respondent's work-preservation defense must be rejected because it is wrong as a matter of precedent, and fatally flawed in its premise. In its brief, the Respondent continues to argue, as it did in *Donley's IV*, a work-preservation defense based on the claim that "that there is a multiemployer bargaining unit to which the Charging Parties belong, and in which Local 18 members have historically and traditionally operated the work at issue." R. Br. at 9. According to the Respondent, "the nature of a work preservation defense . . . is a matter of determining "the scope of the bargaining unit" (R. Br. at 12) and

> establishing that the respondent union has historically performed the work at issue within the bargaining unit. Whether the respondent's members have performed such work at a particular site for a particular employer within the multiemployer bargaining unit is not controlling.

(R. Br. at 13).

However, in *Donley's IV* the Board rejected this argument, root and branch, holding that even the administrative law judge's finding of a smaller multiemployer unit than that advanced by the Respondent (composed of CEA signatories), was irrelevant:

> In adopting the judge's rejection of the Respondent's work preservation defense, we find it unnecessary to rely on his bargaining unit analysis. Regardless of what units are appropriate, and whether Respondent–represented employees in those units have ever performed the disputed forklift and skid steer work, the relevant inquiry under settled precedent is whether the Respondent was attempting to expand its work

jurisdiction to employers whose Respondent-represented employees had never performed the disputed work. See *Laborers Local 265 (Henkels & McCoy),* 360 NLRB No. 102, slip op. at 4–5 (2014); *Stage Employees IATSE Local 39 (Shepard Exposition Services),* 337 NLRB 721, 723 (2002). The Respondent cannot reasonably dispute that this was its objective. . . . . [T]his constitutes work acquisition, not work preservation.

*Donley's IV,* supra slip op. at 4.

Based on *Donley's IV,* the issue in terms of a work-preservation defense can only be whether and how much of the disputed work was performed by Local 18-represented employees *of these charging party employers.* And as to this exclusively relevant point, the Respondent has nothing to offer.

Thus, in *Nerone,* the Board found (slip op. at 4) that

> [t]he record shows that Laborers-represented employees have been performing forklift and/or skid steer work at both projects and the Employers have consistently assigned this type of work in dispute here to employees represented by the Laborers.

This finding was based on the testimony of six witnesses (two from each of the two employers, and two from the Laborers. *Nerone, supra,* slip op. at 2. The Board found that the "Operating Engineers offered no witness to contradict this testimony." Id.

In *Donley's III,* the Board found (slip op. at 3) that:

> we find no merit in Operating Engineers' contention that it has made a work preservation claim. The record shows that Laborers-represented employees were performing the forklift and skid steer work at all of the Employers' construction projects, and that the Employers have consistently assigned work of the kind in dispute to employees represented by Laborers. Where, as here, a labor organization is claiming work that has not previously been performed by employees it represents, the "objective is not work preservation, but work acquisition," and the Board will resolve the dispute through a 10(k) proceeding.

This finding was based upon the testimony of witnesses for five of the employers that the forklift and skid steer work "was always assigned to employees represented by the Laborers," *(Donley's III,* slip op. at 2) and testimony of the sixth that the work was assigned to the Laborers "except on rare occasions." Id. On the other hand, the Board found that Local 18 cited to "evidence of isolated instances when one of the employers may have used an employee represented by Operating Engineers to operate a forklift or skid steer." Slip op. at 4 (Board's emphasis), (see also *Donley's III,* supra at fn. 10, for additional examples of Local 18's evidence).

These Board findings, which are based on overwhelming record evidence, and which I adopt, demonstrate conclusively that the Respondent is seeking to acquire work that—at most—was performed in isolated instances for some of the charging party employers. As a matter of precedent, this utterly fails as a work-preservation defense. As the Board explained with regard to such a claim advanced in *Chicago Carpenters (Prate Instal-*

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 18 (NERONE & SONS INC.)    9

*lations, Inc.)*, 341 NLRB 543, 545 (2004):

> Thus, even assuming that Carpenters-represented employees have performed all aspects of the work in dispute, they have never performed it exclusively. The dispute arose when Carpenters claimed *all* of the disputed work, including that previously performed by employees represented by the Roofers. As such, the Carpenters' objective here was not that of work *preservation*, but of work *acquisition*. *Stage Employees IATSE Local 39*, supra at 723. [Board's emphasis.]

Here too, there is no basis in the record for any claim by the Respondent that its demonstrated efforts to obtain all of the employers' forklift and skid steer work represents work preservation and not work acquisition. Rather, the record shows, as found by the Board, consistent assignment of the work to Local 310-represented employees and, at most, only isolated instances of the Respondent-represented employees performing the work for the Employers.

Moreover, and finally, it is worth pointing out that even assuming, arguendo, that the Respondent could be permitted to relitigate the work-preservation issue—already exhaustively developed in four 10(k) hearings and a separate unfair labor practice proceeding that lasted twelve days—the fact is, the Respondent has no relevant evidence to add. We know this with certainty because in response to my ruling that the Respondent would not be permitted to put on additional evidence in support of its work-preservation defense, I solicited and the Respondent provided an offer of proof as to the evidence it would put on if given the opportunity.

As I noted at the hearing, and as is clear from a review of the offer of proof—and from the Respondent's brief—the Respondent has no additional evidence to provide demonstrating that Local 18-represented employees performed the disputed work *for these charging party employers*. Rather, the offer of proof reflected an intent to adduce evidence of the kind argued in its brief, and argued (but rejected by the Board) in *Donley's IV*: the offer of proof sought to add evidence in support of the Respondent's claim that its represented employees performed the disputed work for *other* employers that (allegedly) were part of a multiemployer bargaining unit. As discussed above, evidence of that kind cannot advance the Respondent's position.[5]

For all of these reasons, I reject the Respondent's work-preservation and collusion defenses and find that the Respondent violated Section 8(b)(4)(ii)(D) as alleged

### CONCLUSIONS OF LAW

1. Nerone & Sons, Inc., R.G. Smith Company, Inc., KMU Trucking & Excavating, Inc., Schirmer Construction Co, Platform Cement, Inc., 21st Century Concrete Construction, Inc., and Independence Excavating, Inc. (the Employers) are employers engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

2. International Union of Operating Engineers Local 18 (the

Respondent), and Laborers' International Union of North America Local 310 (Local 310), are labor organizations within the meaning of Section 2(5) of the Act.

3. The Respondent has engaged in unfair labor practices proscribed by Section 8(b)(4)(ii)(D) of the Act by maintaining pending and filing new grievances against the Employers after the issuance of the Board's decisions in *Donley's III and Nerone*, with an object of forcing or requiring the Employers to assign the skid steer and forklift work awarded in those decisions to Laborers Local 310-represented employees to employees represented by the Respondent.

### REMEDY

Having found that the Respondent violated Section 8(b)(4)(ii)(D) of the Act, I shall order it to cease and desist and to take certain affirmative action designed to effectuate the policies of the Act.

Given the repeated violations of Section 8(b)(4)(ii)(D) in this case and in *Donley's IV*, 363 NLRB No. 184 (2016), I find that a broad cease-and-desist order against the Respondent is warranted. *Plasterers Local 200*, 357 NLRB 2212, 2215 fn. 13; *Hickmott Foods*, 242 NLRB 1357 (1979) (proclivity to violate the Act justifies a broad order).

Having maintained and filed grievances against the Charging Party-Employers contrary to the Board's decisions in *Donley's III*, 361 NLRB No. 37 (2014), and *Nerone*, 363 NLRB No. 19 (2015), with an unlawful objective of forcing or requiring the Employers to assign forklift and skid steer work to employees represented by the Respondent rather than to employees represented by Laborers Local 310, in the area where the Employers operate and the jurisdiction of Laborers Local 310 and the Respondent overlap, the Respondent shall be ordered to withdraw all such grievances.

The Respondent shall post an appropriate informational notice, as described in the attached appendix. This notice shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to members are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its members by such means. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material.

On these findings of fact and conclusions of law and on the entire record, I issue the following recommended[6]

### ORDER

The Respondent, International Union of Operating Engineers Local 18, its officers, agents, and representatives, shall

1. Cease and desist from

(a) Maintaining and/or filing grievances against any of the

---

[5] The offer of proof was filed by the Respondent in the formal case file, and served by the Respondent on May 5, 2016, and it was discussed at the hearing (Tr. 47) and should have been included in the record. I add it now as ALJ Exhibit 1.

[6] If no exceptions are filed as provided by Sec. 102.46 of the Board's Rules and Regulations, the findings, conclusions, and recommended Order shall, as provided in Sec. 102.48 of the Rules, be adopted by the Board and all objections to them shall be deemed waived for all purposes.

Employers[7] contrary to the Board's decisions in *Donley's III*, 361 NLRB No. 37 (2014), and *Nerone*, 363 NLRB No. 19 (2015) for forklift and/or skid steer work performed by employees represented by Laborers Local 310 with an object of forcing or requiring the Employers to assign the work described to employees represented by the Respondent rather than to employees represented by Local 310 in the area where the Employers operate and the jurisdiction of Laborers Local 310 and IUOE Local 18 overlap.

(b) Threatening, coercing, or restraining any of the Employers, or any other person or employer engaged in commerce or in an industry affecting commerce, where an object of its actions is to force or require the employer to assign forklift and/or skid steer work to Respondent-represented employees, rather than to employees who are not represented by the Respondent until the Respondent is certified by the Board as the bargaining representative of the employees performing such work.

2. Take the following affirmative action necessary to effectuate the policies of the Act.

(a) Withdraw all pending, and cease filing, pay-in-lieu grievances against the Employers for work utilizing forklifts and skid steers performed by employees represented by Local 310 in the area where the Employers operate and the jurisdiction of Local 310 and the Respondent overlap.

(b) Within 14 days after service by the Region, post at its office in Cleveland, Ohio, and at any other offices it maintains within Cuyahoga County, copies of the attached notice marked "Appendix."[8] Copies of the notice, on forms provided by the Regional Director for Region 8, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees and members are customarily posted. In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its members by such means. Reasonable steps shall be taken by the Respondent to ensure that the notices are not altered, defaced, or covered by any other material.

(c) Within 14 days after service by the Region, deliver to the Regional Director for Region 8 signed copies of the notice in sufficient number for posting by the Employers at their facilities within Cuyahoga County, if they wish, in all places where notices to employees are customarily posted.

(d) Within 21 days after service by the Region, file with the Regional Director for Region 8 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

---

[7] The Employers referred to in this order are Nerone & Sons, Inc., R.G. Smith Company, Inc., KMU Trucking & Excavating, Inc., Schirmer Construction Co, Platform Cement, Inc., 21st Century Concrete Construction, Inc., and Independence Excavating, Inc.

[8] If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

Dated, Washington, D.C. August 1, 2016

APPENDIX

NOTICE TO EMPLOYEES AND MEMBERS
POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

FEDERAL LAW GIVES YOU THE RIGHT TO

Form, join, or assist a union

Choose representatives to bargain on your behalf with your employer

Act together with other employees for your benefit and protection

Choose not to engage in any of these protected activities.

WE WILL NOT maintain and file, contrary to the Board's decision in *Donley's III*, 361 NLRB No. 37 (2014), and *Nerone*, 363 NLRB No. 19 (2015), pay in-lieu grievances against Nerone & Sons, Inc., R.G. Smith Company, Inc., KMU Trucking & Excavating, Inc., Schirmer Construction Co, Platform Cement, Inc., 21st Century Concrete Construction, Inc., and Independence Excavating, Inc. (the Employers) with an object of forcing or requiring the Employers to assign forklift and skid steer work to employees represented by the IUOE Local 18 rather than to employees represented by Laborers Local 310, in the area where the Employers operate and the jurisdiction of Laborers Local 310 and IUOE Local 18 overlap.

WE WILL NOT threaten, coerce, or restrain the Employers, or any other person or employer engaged in commerce or in an industry affecting commerce, where an object of our actions is to force or require the employer to assign forklift and/or skid steer work to IUOE Local 18-represented employees, rather than to employees who are not represented by the IUOE Local 18 until IUOE Local 18 is certified by the Board as the bargaining representative of the employees performing such work.

WE WILL withdraw all pending and cease filing pay-in-lieu grievances against the Employers over work utilizing forklifts and skid steers performed by employees represented by Laborers Local 310 in the area where the Employers operate and the jurisdiction of Laborers Local 310 and IUOE Local 18 overlap.

INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 18

The Administrative Law Judge's decision can be found at www.nlrb.gov/case/08-CD-135243 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273–1940.

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 18 (NERONE & SONS INC.)        11



## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| **International Union of Operating** §<br>**Engineers, Local 18** §<br>3515 Prospect Avenue §<br>Cleveland, Ohio 44115 §<br> §<br>    Petitioner, §<br> §<br>    v. §<br> §<br>**National Labor Relations Board** §<br>1015 Half Street SE §<br>Washington, D.C. 205070 §<br> §<br>    Respondents §| **LIST OF PARTIES SERVED<br>ADMITTED TO PARTICIPATE<br>IN THE NATIONAL LABOR<br>RELATIONS BOARD<br>PROCEEDINGS** |

Pursuant to Fed.R.App.P 15(c)(1) the following parties have been served, via Regular U.S. Mail, copies of Petitioner's Petition for Review, filed with the Court on April 24, 2017 by and through their counsel:

Meredith C. Shoop
Littler Mendelson P.C.
Oswald Centre
1100 Superior Ave. East
20th Floor
Cleveland, Ohio 44114
mshoop@littler.com

*Counsel for Charging Parties:* Nerone & Sons, Inc.; R.G. Smith Company, Inc.; KMU Trucking & Excavating, Inc.; Schirmer Construction Co.; Platform Cement, Inc.; 21st Century Concrete Construction, Inc.; and Independence Excavating, Inc.

1

Basil W. Mangano
Mangano Law Offices Co., LPA
2245 Warrensville Center Road
Suite 213
Cleveland, Ohio 44118
bmangano@bmanganolaw.com

*Counsel for Parties-in-Interest:* Laborers' International Union of North America, Local 310

Respectfully Submitted,

TIMOTHY R. FADEL, ESQ.
(0077531)
JONAH D. GRABELSKY, ESQ.
(0089009)
Fadel & Beyer, LLC
The Bridge Building, Suite 120
18500 Lake Road
Rocky River, Ohio 44116
Tel: (440) 333-2050
Fax: (440) 333-1695
tfadel@wfblaw.com
jgrabelsky@wfblaw.com
*Counsel for Petitioner*

2

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **International Union of Operating Engineers, Local 18**<br>3515 Prospect Avenue<br>Cleveland, Ohio  44115<br><br>    Petitioner,<br><br>    v.<br><br>**National Labor Relations Board**<br>1015 Half Street SE<br>Washington, D.C.  205070<br><br>    Respondents | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **PETITIONER'S CORPORATE DISCLOSURE STATEMENT** |

Petitioner is a labor organization headquartered in Cleveland, Ohio that represents the interests of thousands of construction equipment operators working in 85 of Ohio's 88 counties and four Northern Kentucky counties. As part of its representational duties, Petitioner negotiates collective bargaining agreements that govern the terms and conditions of employment for its members. Petitioner is not a subsidiary or affiliate of a publicly owned corporation, nor is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome of this case.

Respectfully Submitted,

_____

TIMOTHY R. FADEL, ESQ.
(0077531)
JONAH D. GRABELSKY, ESQ.
(0089009)
Fadel & Beyer, LLC
The Bridge Building, Suite 120
18500 Lake Road
Rocky River, Ohio  44116
Tel: (440) 333-2050
Fax: (440) 333-1695
tfadel@wfblaw.com
jgrabelsky@wfblaw.com
*Counsel for Petitioner*

2



# F&B Fadel & Beyer, LLC

BRIDGE BUILDING SUITE 120, 18500 LAKE ROAD, ROCKY RIVER, OHIO 44116

440.333.2050
FAX 440.333.1695
tfadel@FadelBeyer.com

April 24, 2017



Clerk, U.S. Court of Appeals
District of Columbia Circuit
333 Constitution Ave., N.W.
Washington, D.C. 20001

Re:    International Union of Operating Engineers, Local 18 v. National Labor Relations Board
       Petition for Review

17-1122

Dear Clerk,

Enclosed please find each of the following with regards to the above captioned matter:

1.  The original and five (5) copies of a Petition for Review; and

2.  A check in the amount of Five Hundred Dollars ($500.00) for the filing fee.

Please file the same and return a time-stamped copy to me in the enclosed self-addressed stamped envelope.

Sincerely yours,

Timothy R. Fadel

TRF: kks
Enclosures
cc:    Meredith C. Shoop
       Basil W. Mangano